# STATE OF VERMONT

## ENVIRONMENTAL COURT

In re: Appeal of Daniel Clark,   }
Cherry Clark, Julie Marshall   }
and P. Dermot Cosgrove   }   Docket No. 2-1-01 Vtec
   }
   }

## <u>Decision and Order</u>

Appellants Daniel Clark, Cherry Clark, Julie Marshall and P. Dermot Cosgrove appealed from a decision of the Development Review Board (DRB) of the City of Burlington granting final plat approval and a Certificate of Appropriateness to a Planned Residential Development at the corner of Manhattan Drive and Rose Street. Appellants appeared and represented themselves; Appellee-Applicants Chris Blondin (project developer) and Bancroft and Elizabeth Dwinell (landowners) are represented by Christopher A. Micchiche, Esq.; the City of Burlington is represented by Kimberlee J. Sturtevant, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit by car to the neighborhood alone, by agreement of the parties. The parties made oral argument on the record and, after issuance of the preliminary notice of decision, were given the opportunity to submit supplementary written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and oral arguments and Mr. Clark's written submittal, the Court finds and concludes as follows.

Appellee-Applicants propose a Planned Residential Development of eight units of affordable housing on a 14,786-square-foot (approximately .34 of an acre) corner lot known as 106 Rose Street, at the corner of Rose Street and Manhattan Drive, in the Residential Medium Density zoning district. The lot contained two units of housing in an existing house, plus a lawnmower repair business in a separate building, with associated driveways and paving. The lawnmower business was a nonconforming use in the zoning district, entitled to continue under Article 20 of the Zoning Ordinance. The existing house had a 1,226-square-foot footprint. Together with the two other buildings to be demolished as part of this proposal, the total existing building footprint was 4,966 square feet. The existing lot contained a curb cut onto Manhattan Drive, a busy collector or arterial street, east of its intersection with Rose Street, a local residential street. The existing lot contained 5,150 square feet of pavement or concrete walkway coverage. The total lot coverage of the existing lot as calculated under the definitions in the Burlington Zoning Ordinance was therefore 68%.

The proposed project consists of retaining the existing house, and building three other two-unit buildings, two of which each have a 1006-square-foot footprint, and the third of which has a 1296-square-foot footprint, making the total proposed building footprint 4,576 square feet. The buildings do not exceed the 35-foot height limit applicable to this zoning district. The project proposes to close the curb cut on Manhattan Drive, and to create a driveway and curb cut onto Rose Street between the existing building and one of the new buildings. The project proposes to

preserve two existing street trees and to plant six additional ones, as well as the planting proposed on the property on Exhibit 8, the planting plan.

The project proposes to construct a nine-space parking area (eight regular spaces and one handicapped space) in the interior of the lot, with a single access onto Rose Street through the driveway. The proposal contains 3,740 square feet of pavement or concrete walkway coverage. The total lot coverage of the proposal is therefore 56%. The lot is sufficiently small so that adequate fire protection service to all portions of the lot can be achieved from Rose Street or from Manhattan Drive, should the driveway to the interior parking area be blocked. Moreover, a 12' wide corridor in the location of the former driveway is being kept clear of structures; if proposed trees for that corridor were replaced by smaller plants, that corridor could function for emergency access if necessary.

A Planned Residential Development is a permitted residential use in the Residential Medium-Density zoning district. Under the density bonus of § 14.1.14 for affordable housing, the density allowed on this site would be 24 units per acre, or 8 units for this site. The new buildings meet the required front yard setbacks on Rose Street and Manhattan Drive, based on the average setback of existing structures on adjacent lots (§ 5.3.6(g)) and the required side or rear yard setbacks on the other two sides. The maximum allowable lot coverage in this district would be 40%, except that under the density bonus of § 14.1.14 for affordable housing the maximum lot coverage is 48%. The proposed coverage is a reduction (improvement) in lot coverage from the prior non-complying structures under § 20.1.6(b).

The neighborhood surrounding this proposal is an older urban residential neighborhood, with some mixed commercial uses. It is bounded by Manhattan Drive which is a busy arterial or collector street serving commuter through traffic as well as local traffic. Existing houses are on relatively small lots; some of the older houses were originally worker housing dating from the mid-nineteenth century. Most of the houses are located relatively close to the street line, with small back yards and no off-street parking. The existing house on the lot and other older neighborhood structures are characterized by Italianate style scrolls and related trim features.

The proposed buildings relate appropriately to their environment, in that they echo the apparent density, the setback and the Italianate scroll trim[1] of the older housing in the area. The cluster development of this planned residential development is more consistent with the scale and appearance of the neighborhood than a single 8-unit building would have been. The condominium ownership of the units may promote owner-occupation and better stewardship of the units.

Appellants are concerned that the on-site circulation will be inadequate and will result in congestion on Rose Street once the Manhattan Drive curb cut is closed. The on-site circulation will be adequate, although a design with better on-site circulation could have been developed for a property with two curb cuts. However, the City's policy to reduce curb cuts to one per lot will improve the overall neighboring traffic flow on Manhattan Drive. The proposed curb cut is narrow but is of adequate width for the neighborhood and the vehicles that will use it, and there is an adequate sight distance when pulling out of the curb cut onto Rose Street, as long as the driveway width and curb cut onto Rose Street is not blocked by snow. The circulation within the

parking area is adequate for the nine spaces provided, as long as the parking area is not constricted by piles of snow.

The six new proposed units will have little effect on traffic on roads and highways in the vicinity, beyond that generated by the two existing units, even without accounting for any traffic that may have been generated by the lawnmower business. The new units will generate three new vehicle trips in the morning peak hour and four new vehicle trips in the afternoon peak hour. No traffic study is required by the zoning ordinance for this small an increase in traffic. Left turns from Rose Street onto Manhattan Drive already experience delays during rush hour traffic; however, the additional traffic will not increase these delays appreciably. In addition, the street pattern allows traffic to proceed along Rose Street in the other direction to reach the street network when Manhattan Drive is busy.

The City has adequate water supply (including adequate water pressure) and sewage disposal capacity to serve the proposed additional units.

Appellants are concerned that the plan provides inadequate open space on site and inadequate space for any children living on site to play. The plan provides more unpaved open space than the previous lot coverage, and provides a degree of play space consistent with urban residential housing.

Appellants are concerned that there is contamination of the site from past practices of lawnmower business. The Phase I Environmental Site Assessment in evidence as Exhibit 9 disclosed no such contamination of concern, and Appellants did not present evidence to the contrary. In addition, regardless of ownership the site must meet and continue to meet the state standards regarding hazardous waste and contamination.

Appellants are concerned that runoff from the site will not be absorbed within the ground and will flood nearby basements. Erosion controls will be in place during construction to avoid any such problems. After construction, the site is designed so that little if any rainwater will leave the site. There will be more permeable surfaces than under the existing conditions. The soils on the site are a loamy sand with high permeability, allowing rainwater to soak into the ground, and the site is designed with two drywells located in the parking lot to enable infiltration and to prevent runoff from leaving the site.

Appellants are concerned that residents will maintain more than one car per unit and will park the excess cars on Rose Street, thereby exacerbating the problem with finding on-street parking for other existing buildings without off-street parking. However, the Zoning Ordinance allows waiver of up to half the normally-required parking, to reduce dependence on automobiles within the downtown areas of the City. Thus, even if the project were not an affordable housing project, the City's parking policies would suggest having one space per unit rather than the two otherwise required. To promote affordable housing, all the otherwise-required parking could be waived. In the present application, one parking space per unit, with an additional handicapped parking space, is appropriate for the neighborhood and its location within the City with access to good public transportation. However, to avoid creating a burden on the on-street parking on Rose

Street, the condominium association regulations should address that each unit is only entitled to one space in the project's parking area.

Appellants are also concerned that snow will not be properly stored on-site or properly removed from the site, but instead will be plowed illegally onto Rose Street. The adequacy of the snow removal directly affects the adequacy of the access driveway to the interior of the site. Accordingly, snow removal from the paved areas of the site must also be required as a condition of approval and must be required in the condominium owners' association bylaws as the owners' responsibility.

Appellants are concerned that this project will "impose sociological disruption" on this community, especially if the units are rented out and are not owner-occupied. Appellants disagree with the policy found in Article 14 of the Zoning Ordinance to reduce the parking requirements for affordable housing and to allow greater density and lot coverage than would be allowed for conventional market rate housing. Essentially, the Burlington Zoning Ordinance contains a policy choice, adopted by the City's voters, to provide housing opportunities for all of Vermont's citizens as required by state law, to mitigate the effect of the market on the limited supply of land within the City suitable for housing, and to prevent overcrowding and deterioration of the existing stock of affordable housing. § 14.1.1. As well as promoting affordable housing, the density provisions promote development of available sites in the downtown area (so-called "infilling") and the parking provision promote the use of alternatives to the automobile in downtown Burlington. The courts cannot rewrite the policies or provisions found in any municipality's zoning ordinances or in state law. Citizens who disagree with ordinance provisions may seek to have them changed in the ordinance amendment process; the courts must apply the ordinances as they exist at the time an application is filed.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the proposal is approved, as shown on the plans in evidence and subject to the conditions imposed by the DRB except as changed by the following additional conditions necessary to implement the purposes of the zoning ordinance. § 17.1.5.

Snow shall be removed from the site so as to retain the full width of the driveway and the full use of all the parking spaces throughout the winter season. Any snow that cannot be plowed off the pavement on site must be removed from the site. No snow shall be plowed from the site onto Rose Street and snow shall be plowed or shoveled, if necessary by hand, so as to remove it from obstructing drivers' visibility of the area from the front of the buildings onto Rose Street. The condominium owners' association bylaws shall contain a provision making compliance with this condition a responsibility of the owners, and requiring the inclusion of this condition in any lease of any of the units.

The condominium owners' association bylaws shall contain a provision establishing that only one parking space is provided for each unit, and that parking on Rose Street may be restricted or regulated under a permit program by the City, and requiring the inclusion of this provision in any lease of any of the units.

A twelve-foot-wide corridor in the location of the former driveway onto Manhattan Drive shall be kept clear of structures, trees and large shrubs, to allow emergency access to the central parking lot if necessary. The area which was to have been planted with two Serbian spruce trees may be planted with tall grasses or other perennials or suitable plant material, and a breakaway chain or low fencing sufficient to provide a visual indication that it is not available as a driveway. The planting plan shall be revised and a copy shall be filed with the Development Review Board to reflect this requirement.

The Court also urges the Rose Street Association and the applicant to explore with the City the use of mediation to address and perhaps to prevent future disputes regarding development on the street, including consideration of whether this neighborhood is suitable for an on-street parking permit program. The Court has included a list of mediators working in the Burlington area and a handout on the mediation process.

Dated at Barre, Vermont, this 4th day of January, 2002.

_____

Merideth Wright
Environmental Judge

### Footnotes

[1] The three new buildings are proposed to have covered entries, scrollwork under the door overhangs and window trim consistent with the Italianate style of the existing building but not shown on the building elevations in evidence.